UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA                    :

   - against -                              :                19 Cr. 899 (PAC)

JONATHAN LOPEZ,                             :                **OPINION & ORDER**

             Defendant.            :
------------------------------------------------------------------X

      At the conclusion of a competency hearing on June 15, 2021, the Court orally announced its

finding that Defendant Jonathan Lopez "is presently suffering from a mental disease or defect

rendering him mentally incompetent to the extent that he is unable to understand the nature and

consequences of the proceedings against him [and] to assist properly in his defense." 18 U.S.C.

§ 4241(d); Competency Hr'g Tr. 32–33 ("Comp. Hr'g Tr.").[1] The Court committed Lopez to the

Attorney General's custody for hospitalization and evaluation. Comp. Hr'g Tr. 33:19–24;

Commitment Order 1, ECF No. 61. This opinion more fully sets forth the Court's reasoning for

those decisions.

## BACKGROUND

      On January 18, 2013, a train operated by CSX Transportation struck Jonathan Lopez. In

addition to other injuries, Lopez developed a brain injury in the aftermath of the collision. *Lopez*

*v. CSX Transp., Inc.*, No. 3:14-cv-257, 2020 WL 6151582, at *3, *4, *6 (W.D. Pa. Oct. 20,

2020); Comp. Hr'g Tr. 16:21–25. He then sued CSX in the Western District of Pennsylvania.

*Lopez*, 2020 WL 6151582, at *1.

      Lopez was arrested in the Southern District of New York on September 18, 2019, and on

December 12, 2019, the Grand Jury charged Lopez with making threats against the Honorable

---

[1] This transcript has not yet been filed on the docket.

Kim R. Gibson, the presiding judge in Lopez's suit against CSX.  Arrest Notation below ECF
No. 2; Indictment 1–2, ECF No. 9.

On March 6, 2020, After Lopez failed to attend two court-ordered medical examinations,
Judge Gibson appointed Lopez's cousin to act as his guardian ad litem.  *Lopez*, 2020 WL
6151582, at *1.  Then, on October 20, 2020, in a lengthy opinion discussing Lopez's mental
illness causing paranoid delusions, Judge Gibson ruled, "by a preponderance of the evidence,
that Lopez's mental condition impedes his ability to protect his rights and that he 'lacks capacity
to understand the proceedings' and lacks the capacity to 'assist in his own [case].'"  *Id.* at *19
(alteration in original).[2]  Judge Gibson concluded that "because Lopez is incompetent," the
appointment of Lopez's cousin to act as his guardian remained appropriate.  *Lopez*, 2020 WL
6151582, at *22.

Meanwhile, Lopez's criminal case before this Court continued.  On April 8, 2021, the
Government moved under 18 U.S.C. § 4241(a) for a hearing to determine Lopez's competency
to stand trial.  Mot. Competency Hr'g 1, ECF No. 44.  In the Government's view, Judge
Gibson's finding that Lopez is incompetent in his civil case "create[d] a sufficient doubt of his
competence to stand trial to require further inquiry."  *Id.* (citation omitted).  The Court ordered
Lopez's counsel to show cause as to why a competency hearing is not necessary.  ECF No. 45.
On April 23, Lopez's counsel agreed that Judge Gibson's determination provides "a basis to
conduct a hearing pursuant to 18 U.S.C. § 4241(a)."  Def.'s Resp. to Mot. Competency Hr'g 1,
ECF No. 55.  The parties repeated these positions at a conference on May 11.  May 11, 2021
Conf. Tr. 4:3–10; 6:21–7:7, ECF No. 58.

---

[2] The civil standard that Judge Gibson applied (N.Y.C.P.L.R. § 1201 and related caselaw) is the
same as the federal criminal standard. *Id.* at *17; 18 U.S.C. § 4241(d); *Dusky v. United States*,
362 U.S. 402, 402 (1960).

2

The Court found reasonable cause to believe that Lopez "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense," and scheduled a competency hearing for June 15, 2021. Competency Order 1, ECF No. 56 (quoting § 4241(a)). In advance of the hearing, the parties jointly submitted 20 exhibits for the Court's consideration, along with a stipulation to the admissibility of those exhibits.[3]

## DISCUSSION

"It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995) (citation omitted). Instead, "[t]he mental illness must deprive the defendant of the ability to consult with his lawyer 'with a reasonable degree of rational understanding' and to understand the proceedings against him rationally as well as factually." *Id.* (quoting Dusky, 362 U.S. at 402).

A defendant is incompetent to stand trial if he is "presently suffering from a mental disease or defect" that renders him "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." § 4241(d). In making its competency determination, a court may rely on psychiatric reports and its own observations of the defendant's demeanor during the proceedings, among other things. *Id.* at 411.

Applying these standards, the Court found, by a preponderance of the evidence, that Lopez is presently suffering from a mental disease or defect causing his paranoid delusions that render him unable (1) to rationally understand the nature and consequences of the criminal proceedings against him, and (2) to properly assist in his own defense. Accordingly, the Court

---

[3] Upon the Government's motion and without objection from Lopez's counsel, the Court admitted these joint exhibits into evidence at the competency hearing. Comp. Hr'g Tr. 3–7:6.

was required to commit Lopez to the Attorney General's custody for hospitalization to evaluate the likelihood that he will regain competency in the foreseeable future. § 4241(d)(1); *United States v. Magassouba*, 544 F.3d 387, 404–05 (2d Cir. 2008). In reaching its determination, the Court considered (1) the joint exhibits submitted by the parties, including Judge Gibson's October 20, 2020 opinion and the psychological evaluations of Lopez conducted by Dr. Shannon Edwards and Dr. Debbie Green, respectively; (2) Lopez's testimony at the competency hearing; (3) the Government's position that Lopez is incompetent within the meaning of the statute (Comp. Hr'g Tr. 7:7–13); and (4) the Court's observations of Lopez over the course of his criminal case.

Lopez's representations at the competency hearing made clear that he continues to suffer from the same paranoid delusions that concerned Judge Gibson, namely, that he is the target of a wide-reaching conspiracy orchestrated by CSX to harass Lopez and have him declared incompetent. *Lopez*, 2020 WL 6151582, at *6, *8, *18–19; *see generally* Comp. Hr'g Tr. 10:6–30:25. The alleged purpose of that plan is "to either ensure that he is [sic] loses his case against CSXT or to have him murdered, and then use the Court's incompetency finding to have his murder ruled a suicide." *Lopez*, 2020 WL 6151582, at *19; *see also id.* at *18; Comp. Hr'g Tr. 21:6–23:8; 27:24–28–4. Prior to the competency hearing, at a conference on March 30, 2021, Lopez repeated his belief that the prosecutor in this case is involved in the conspiracy to have him declared incompetent. *See* Mar. 30, 2021 Conf. Tr. 6:8–16, ECF No. 51 ("[I]t's obvious that the prosecutor and the (technical interruption) has forced a motion for me to see a mental specialist for my incarceration."). Lopez explained further that "they" are "trying to marginalize my character[,] [a]nd using a pawn is the fact is that my disadvantages of my childhood to capitalize my adulthood and extortion to the court system." *Id.* at 6:23–7:3. The Court asked

4

whether Lopez was talking about his case against CSX, to which he replied yes, "[a]nd by the prosecutor asking, I tried to put a motion for me to be seen by a mental health specialist is only a request in CSX perspective.  So, they're only self[-]entitled to diminish my character.  And it's been well planned out.  [T]he evidence is all there."  *Id.* at 7:8–17.  At the competency hearing, Lopez reiterated his belief that "CSX pressed the prosecutor . . . to press the issue of me being placed into a mental health facility.  And this a propensity and act of innovation by the company of CSX all to marginalize my character and stating that I am incompetent."  Comp. Hr'g Tr. 22:15–19.  In response to questioning from his attorney, Lopez told the Court that CSX is responsible for his arrest in this case, which "they" planned to prevent Lopez from attending proceedings in his civil case against CSX.  *Id.* at 19:15–20:7; *see also id.* at 30:18–25.

In addition to CSX and his own attorney in his civil case, Lopez has swept Judge Gibson (*Lopez*, 2020 WL 6151582, at *19; Comp. Hr'g Tr. 29:3–23), New York and Pennsylvania police officers (*Lopez*, 2020 WL 6151582, at *18; Comp. Hr'g Tr. 11:15–12:7; 23:9–21), the federal marshals (Comp. Hr'g Tr. 25:4–26:6), and the prosecutor (*see supra* pp. 4–5) into his delusional conspiracy theory.  Lopez blames all his problems, big and small, on CSX and its alleged co-conspirators.  He believes that (1) CSX caused people to "provoke" him by spitting towards him and pouring milk into his car (Comp. Hr'g Tr. 12:8–13:20); (2) CSX surveils Lopez, including by tracking Lopez's movements either through his phone or by placing a tracking device on his car (*id.* at 11:15–12:1); (3) CSX colluded with Lopez's attorney in his civil case to place a "hit out on" (i.e., attempt to murder) Lopez (*id.* at 13:22–14:17; 15:1–17:2); (4) Lopez's civil attorney was doing favors for CSX, such as filing the complaint late to "buy time for CSX" (*id.* at 14:12–24); (5) CSX caused "dirty blood" to be transfused into Lopez following the train accident (*id.* at 17:3–19:7); (6) CSX hacked Lopez's computer and "mov[ed]

5

the mouse from [his] laptop" (*id.* at 19:8–14); (7) CSX shortened/damaged his prosthetic leg as a

"moronic prank" to make Lopez walk off-balance (*id.* at 20:8–25); (8) CSX corrupted a police

officer to falsify a police report (to state that Lopez had a mental health issue, so that CSX could

later challenge his competency) and the officer later received a promotion for this misdeed (*id.* at

21:16–24–9); (9) CSX engaged police officers in New York and Pennsylvania to give Lopez "car

tickets" (*id.* at 10:22–12:3); (10) CSX intimidated Lopez's ex-girlfriend and told her to stay

away from him (*id.* at 25:4–17); and (11) CSX is responsible for Lopez's packages not being

delivered to his home (*id.* at 26:7–27:9).  Lopez told the Court that these incidents are still

occurring today.  *Id.* at 28:8–18.

These delusions are evidence that Lopez lacks a rational understanding of the nature and

consequences of the criminal proceedings against him.  As to the nature of the proceedings,

Lopez believes that his criminal case is another part of the CSX conspiracy, and that CSX

controls the participants in it.  Lopez believes that the cause of his arrest is not the Facebook

posts which he posted online and which the Government interprets as threats against Judge

Gibson, but other Facebook posts that Lopez sent to Judge Gibson as "exhibits" "addressing

[CSX's] negligence," "which was a threat to CSX."  *Id.* at 30:9–25; *see also id.* at 35:4–8.

Lopez also fails to rationally understand the consequences of these proceedings: despite his

arrest in the instant case and the multiple conferences the Court has held to address his

noncompliance with the terms of his supervised release, Lopez insists that he "ha[sn't] been in

trouble with the law in years."  *Id.* at 35:9–15.

Further, these delusions render Lopez unable to properly assist in his defense.  Lopez has

incorporated the criminal proceedings against him (including the competency hearing) into his

conspiracy theory, so any decisions he makes regarding his criminal case "would almost

certainly be motivated by his delusional beliefs" and thus would not be rational. *See Lopez*, 2020 WL 6151582, at \*18; *see also id.* at \*19. Lopez also has a diminished ability to communicate. His speech is often "rambling, incoherent, and illogical." *Lopez*, 2020 WL 6151582, at \*18; *see also id.* at \*9; Mar. 30, 2021 Conf. Tr. 6–8; *see generally* Comp. Hr'g Tr. 10:16–30:25; 35:3–36:24. He frequently "uses non-sensical words" and communicates in a disorganized manner. *Lopez*, 2020 WL 6151582, at \*18. This combination of delusional thinking and communication issues results in Lopez lacking a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Nichols*, 56 F.3d at 410 (citation omitted).

The Court's conclusion is further supported by the reports of Dr. Edwards and Dr. Green.[4]

> CSXT retained Dr. Shannon Edwards, a Licensed Clinical Forensic Psychologist, to review Lopez's social media posts to determine "whether the Plaintiff evidenced the mental abilities required under the *Dusky* standard related to his competency to participate in his own legal proceedings." Dr. Edwards did not interview Lopez and only reviewed Lopez's social media posts. In a report dated February 13, 2019, Dr. Edwards concluded that "the Plaintiff does not sufficiently present the ability to consult with his lawyer with a reasonable degree of rational understanding." Dr. Edwards stated that "available records demonstrated Mr. Lopez's paranoia,

---

[4] The Court reviewed these reports along with the rest of the joint exhibits, which include older psychological evaluations and Lopez's Facebook posts. Because Judge Gibson's summaries are clear and concise, and cover the same material this Court wishes to discuss, the Court cites Judge Gibson's publicly-available opinion rather than the underlying documents, which are not publicly available. *See Hickson v. V.I.M. Store*, No. 20-CV-2974, 2020 WL 7042762, at \*3 (E.D.N.Y. Dec. 1, 2020) ("Courts have specifically [found] that there is a recognized privacy interest in medical records, albeit one that is neither fundamental nor absolute.") (citation omitted).

suspiciousness, and other symptomology directly related to his inability to
cooperate with his Counsel" and his social media posts "evidenced an individual
preoccupied with conspiracy theories, ideations of his Counsel colluding with
Opposing Counsel at CSX Transportation, as well as clear perseveration regarding
his Counsel's involvement in proceedings against him." Dr. Edwards concluded
that "it is the undersigned's opinion, held to a reasonable degree of psychological
certainty, Mr. Lopez is not competent to participate in his own legal proceedings"
and "he does not sufficiently present the ability to consult with his lawyer with a
reasonable degree of rational understanding."

*Lopez*, 2020 WL 6151582, at *7 (citations omitted). Although Dr. Edwards did not interview
Lopez, she acknowledged that deficiency and nevertheless "reached her conclusion 'to a
reasonable degree of psychological certainty.'" *Id.* at *20 (citation omitted). The Court agrees
with Judge Gibson that Dr. Edwards' opinion is entitled to significant weight, because the other
information in the record concerning Lopez's mental state is all consistent with the Facebook
posts and medical report upon which Dr. Edwards based her opinion. *Id.*

Dr. Green,[5] by contrast, interviewed Lopez for three hours, and also interviewed his
mother and cousin/guardian. *Id.* at *8. Lopez's mother and cousin relayed to Dr. Green the
"significant changes in Lopez's mood and thinking" following the train accident, and his
expression of paranoid beliefs about his civil lawyer and CSX. *Id.* at *9. "Both said that Lopez
had become 'consumed'" by those beliefs. *Id.* (citation omitted). After conducting her
interviews and reviewing documents (including Dr. Edwards' report), Dr. Green concluded that,

---

[5] Although Dr. Green's report was commissioned to assess his risk of violence rather than his
competency to stand trial, her report is helpful to the Court, as it was to Judge Gibson, regardless
of its stated purpose. *Lopez*, 2020 WL 6151582, at *19.

following the train accident, Lopez developed a psychotic disorder and "delusional beliefs,

primarily focused on the various legal personnel and the transportation company involved in his

civil lawsuit following this accident." *Id.* (citation omitted).   Dr. Green also noted Lopez's use

of nonsense words and illogical speech.   *Id.*   She "diagnosed Lopez with 'Unspecified

Depressive Disorder'" and "characterized Lopez as having a 'major mental illness.'"   *Id.*

(citations omitted).   Importantly, Dr. Green determined that Lopez's "delusional beliefs and

psychotic illness tend to be chronic." *Id.* (citation omitted).

       The Court recognizes that the documentary evidence before it is somewhat dated.   Dr.

Edwards' report is dated February 13, 2019; Dr. Green's report is dated December 16, 2019; and

Judge Gibson's opinion is now eight months old.   But they are still useful, because "there is no

evidence that Lopez's condition has improved" since those documents were created, "and one

would not expect him to improve without treatment since his paranoid delusions have been

largely the same since 2015 and Dr. Green considers Lopez's mental illness to be chronic." *Id.*

at *20.   Although the Court previously ordered his participation in mental health treatment,

Lopez has not engaged in it fully and consistently, so he has been unable to take advantage of

any help there might be. *See* Oct. 29, 2020 Conf. Tr. 7:3–22, ECF No. 30; Mar. 30, 2021 Conf.

Tr. 3:22–4:3, 5:25–8:4; May 11, 2021 Conf. Tr. 3:19–4:2.   Lopez's testimony at the competency

hearing unfortunately confirmed that his delusions and communication issues persist.

       At the conclusion of the competency hearing, the Court denied defense counsel's request

for Lopez to remain out of custody until the Attorney General places him in a suitable facility,

and self-surrender at that time.   The reason for the denial is that Lopez's history of

noncompliance with the conditions of his bail (including curfew/location violations (Letter dated

Mar. 8, 2021 at 1–2, ECF No. 40) and failing to attend mental health treatment (Endorsed Letter

dated Dec. 2, 2020 at 1, ECF No. 29; Letter dated Mar. 29, 2021 at 1, ECF No. 43)), his past

failure to appear (Minute Entry dated Sept. 18, 2020), and his admission during the competency

hearing that he possesses pieces of a firearm (Comp. Hr'g Tr. 27:10–23; 35:22–36:20) left the

Court with little confidence that Lopez would self-surrender when the time comes, or that it

would be wise to allow him out in the community in the meantime.

## CONCLUSION

The Court concludes, by a preponderance of the evidence, that Lopez "is presently

suffering from a mental disease or defect rendering him mentally incompetent to the extent that

he is unable to understand the nature and consequences of the proceedings against him [and] to

assist properly in his defense." § 4241(d).  As stated in the Commitment Order, Lopez is

committed to the custody of the Attorney General for hospitalization and evaluation in a suitable

facility "for such a reasonable period of time, not to exceed four months, as is necessary to

determine whether there is a substantial probability that in the foreseeable future he will attain

the capacity to permit the proceedings to go forward." § 4241(d)(1).  The director of the chosen

facility must provide this Court with a status update within 60 days of the filing of that order, i.e.,

by August 16, 2021.  Pursuant to 18 U.S.C. § 3161(h)(4), the period of delay caused by the

Commitment Order will be excluded from the Speedy Trial Act's calculation of time within

which trial of this case must commence.

The Clerk of Court is directed to close the motion at ECF number 44.


Dated:  New York, New York
     June J7, 2021

SO ORDERED

_Paul A. Crotty_

HONORABLE PAUL A. CROTTY
United States District Judge

10